# EXHIBIT A

## JAMS ARBITRATION CASE REFERENCE NO. 5160000362

**Spivak, Rivka,**
    **Claimant,**

    and

**Google,**
    **Respondent.**

## CORRECTED FINAL AWARD

## Order Re: Google's Motion for Costs and Fees, Spivak's Motion for Sanctions and Motion for Disqualification

The Final Award issued on December 8, 2023 referred to Claimant as Respondent in several places in error. This Award corrects those errors. No other changes have been made.

By Order dated October 24, 2023 the Undersigned Arbitrator granted the Respondent's Motion for Summary Judgment and dismissed the claims of the Claimant, Rivka Spivak. Following that Order the Respondent Google made a Motion for Costs and Fees pursuant to the applicable rules and law. Claimant Spivak answered and made a number of Motions herself including but not limited to a Motion for Sanctions, Motion to Disqualify and an indication that a Bar Complaint would be filed against Counsel Allison Lane. This Order addresses as many of these issues as the Undersigned Arbitrator believes he has jurisdiction to address.

### (1) The Motion for Disqualification

Claimant Spivak has made a Motion to Disqualify based on the argument that this matter was governed by Washington law and Counsel for Google did not have a license to practice law in Washington state. The undersigned Arbitrator has reviewed the material submitted by the

Claimant and FINDS that the Claimant's Motion to Disqualify is not timely and therefore DENIES the Motion. This Motion was filed after the October 24 Order, after the Claimant had many opportunities to make this Motion and is not timely.

## (2) Motion for Sanctions

Claimant has authored many emails, recently several daily. Many of those emails are devoted to complaints about the conduct of the Respondent Google's attorneys and one or more include a Motion/Request for the imposition of sanctions against those lawyers. After reviewing all material submitted by the attorneys and Ms. Spivak I FIND no basis for the imposition of sanctions. and THEREFORE, I DENY the Motion for Sanctions.

## (3) Motion for Costs and Fees

After successfully obtaining an Order dismissing the Complaint filed by Ms. Spivak, counsel for Respondent Google filed a Motion for Costs and Fees. This Motion was filed pursuant to the applicable JAMS rules, the substantive Washington State law and the original employment contract between Google and Ms. Spivak. The Undersigned has always approached these motions using judicial discretion. The employment agreement referenced above seems to mandate the award of fees and costs but there is no guidance in the contract, rules or statutes as to an amount - that is completely discretionary. The Undersigned has examined the material submitted by both sides on this issue. Google has requested approximately $35,000. Spivak has naturally opposed that. The Undersigned AWARDS Google a judgment of $10,000 against Spivak. HOWEVER, Google may not enforce this award against Spivak unless she files future actions against Google BASED ON THE SAME FACTS AND ALLEGATIONS. This repetitive litigation must stop and hopefully this judgment of $10,000 hanging over her head is motivation for that.

## (4) Miscellaneous

There are a number of recent emails which the Undersigned has received from the Claimant Spivak wherein she threatens to file a bar complaint and there is mention of her children and family dog. The Undersigned has no jurisdiction to issue an Order on these issues but I encourage you to stop this activity. Children and family pets are very private and should not be the subject of emails sent to the Arbitrator or opposing counsel. In the past I taught Professional Responsibility at the Seattle University Law School for 19 years. I obviously know a great deal about the subject. I have seen nothing in the actions of any attorneys for the Respondent which violate any of the Rules of Professional Conduct. They are simply doing their jobs. I ask that this threat be stopped immediately.

Lastly, this is a FINAL AWARD. It is intended to resolve all issues. Please send no more emails or make no more motions or requests. By the issuance of this Order, this matter is Closed.

Done this 12th day of December 2023

Hon. Richard F. McDermott (Ret.)
Arbitrator

# EXHIBIT B

Google Inc.
At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together the "Company" ), and in consideration of my receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

At-Will Employment.  I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT.  I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY.  ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

Confidential Information.

(a)    Company Information.  I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company.  I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company.  I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company.  I understand that "Company Confidential Information"  means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information.  I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

(b)    Former Employer Information.  I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by

such employer, person or entity.

(c)    Third Party Information.   I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information").   By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties.   I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties.   I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

(d)    User Data.   User Data consists of information directly or indirectly collected by Google from users of its services.  User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information.  I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

Inventions.

(a)    Inventions Retained and Licensed.   I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which relate to the Company's business, products, or research and development (collectively referred to as "Prior Inventions"), which are not assigned to the Company hereunder; or, if no such list is attached, I represent and warrant that there are no such Prior Inventions.  Furthermore, I represent and warrant that none of the Prior Inventions listed on Exhibit A of this Agreement will materially affect my ability to perform my obligations under this Agreement.  If, in the course of my employment with the Company, I incorporate any Prior Invention into, or use any Prior Invention in connection with, any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

(b)    Assignment of Inventions.   I agree that I will promptly make full

written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company, or with the use of the Company's equipment, supplies, facilities, or Company Confidential Information,(collectively referred to as "Inventions" ) except as prohibited by the law of the State in which I am employed by the Company and as otherwise set forth in Section 3(e) below.  I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act.  I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(c)   Maintenance of Records.  I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company.  The records are and will be available to and remain the sole property of the Company at all times.

(d)   Patent and Copyright Registrations.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions and any rights relating thereto.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement.  If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with

respect to such Inventions with the same legal force and effect as if executed by me.

(e)   Exception to Assignments. Â  I understand that the provisions of this Agreement requiring assignment of Inventions to the Company shall not apply to any invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Confidential Information except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any work that I performed for the Company. Â  I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and not otherwise disclosed on Exhibit A.

Conflicting Employment .

(a)   Current Obligations. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

(b)   Prior Relationships. Without limiting Section 4(a), I represent that I have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company.  I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law.  I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination.  Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

5.    Returning Company Documents.  Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, Â any and all Company property, including, but not limited to, Confidential Information, User Data,

Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to SectionÂ 3(c). I also consent to an exit interview to confirm my compliance with this SectionÂ 5.

6.     Termination Certification.  Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the â€œTermination Certificationâ€ attached hereto as Exhibit B. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

7.     Notification of New Employer.  In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

8.     Solicitation of Employees.  I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Companyâ€™s employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

9.     Export Statement of Assurance.  I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR").Â  I herby certify that I will not export, re-export or release these items in violation of the EAR or ITAR.Â  In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company.Â  I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

10.    Code of Conduct Acknowledgement.  I acknowledge that I have read the Companyâ€™s Code of Conduct, which is available on the Companyâ€™s public website and can be found by clicking â€œAbout Googleâ€ and looking on the â€œInvestor Relationsâ€ page of the site. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

11.    Acknowledgment of Employee Handbook.  I acknowledge that I have read the Companyâ€™s Employee Handbook which is available on the Companyâ€™s internal website. I agree to abide by the policies and guidelines set forth in the Employee Handbook, as they may be revised from time to time.

12.   Representations.  I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement.  I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company.  I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

13.   Audit.  I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company.  As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion.  I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites.  I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone and technology systems to which I will have access in connection with my employment.

14.   Permission for Use of Images.  I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review.  My name may or may not be included along with my image.  I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of Company with respect to such use of my image(s).

15.   Arbitration and Equitable Relief.

(a)   Arbitration.  IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION ADMINISTERED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES").  IN THE EVENT THERE IS NOT A CONVENIENT JAMS LOCATION FOR ARBITRATION, THE

PARTIES MAY MUTUALLY AGREE TO ANOTHER ARBITRATION PROVIDER.  DISPUTES
WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A
TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW,
INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS
ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE
DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT
PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND
RETRAINING NOTIFICATION ACT, THE FAMILY AND MEDICAL LEAVE ACT, CLAIMS OF
HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION, ANY STATUTORY
CLAIMS, AND CLAIMS UNDER ANY OTHER APPLICABLE LAWS OF THE STATE OF MY
EMPLOYMENT WITH THE COMPANY, TO THE EXTENT ALLOWED BY LAW.  I FURTHER
UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES
THAT THE COMPANY MAY HAVE WITH ME.

(b)    Procedure. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO
DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING
MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR
TO STRIKE, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION
HEARING.  I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD
ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR
SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT
AS PROHIBITED BY LAW.  I UNDERSTAND THAT THE COMPANY AND I WILL SPLIT ANY
ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS, EXCEPT
THAT I SHALL PAY THE ENTIRE FILING FEE ASSOCIATED WITH ANY ARBITRATION
THAT I INITIATE.  I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL
BE CONDUCTED IN ACCORDANCE WITH THE LAWS OF THE STATE in WHICH I AM
EMPLOYED, AND THAT THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE AND
PROCEDURAL LAWS OF THAT STATE, WITHOUT REFERENCE TO RULES OF CONFLICT OF
LAW.  TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH THE LAWS OF THE
STATE in which i AM EMPLOYED, THE JAMS RULES SHALL TAKE PRECEDENCE.  I
AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING.  I AGREE
THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA
CLARA COUNTY, CALIFORNIA.

(c)    Remedy. EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT,
ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE
BETWEEN ME AND THE COMPANY.  ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE
RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO
PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.
NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD
OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL
NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED
BY LAW.  NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO
WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d)    Availability of Injunctive Relief.  I UNDERSTAND THAT ANY BREACH OR
THREATENED BREACH OF THE AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION,
INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT BETWEEN ME AND THE COMPANY
OR ANY OTHER AGREEMENT WITH THE COMPANY REGARDING TRADE SECRETS,
CONFIDENTIAL INFORMATION, NON-COMPETITION OR NON-SOLICITATION WILL CAUSE
IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE
REMEDY THEREFOR.  ACCORDINGLY, BOTH PARTIES SHALL BE ENTITLED, AS A
MATTER OF RIGHT, TO SEEK AND OBTAIN, IN ANY COURT OF COMPETENT
JURISDICTION WITH RESPECT TO ANY ACTUAL OR THREATENED BREACH OF ANY
PROVISION OF THIS AGREEMENT OR ANY OTHER AGREEMENT REGARDING TRADE
SECRETS, CONFIDENTIAL INFORMATION, NON-COMPETITION OR NONSOLICITATION:

(I) A DECREE OR ORDER OF SPECIFIC PERFORMANCE TO ENFORCE THE OBSERVANCE

AND PERFORMANCE OF THE PARTIESâ€™ OBLIGATIONS; AND (II) AN INJUNCTION
RESTRAINING SUCH BREACH OR THREATENED BREACH. IN THE EVENT THAT EITHER
PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO
RECOVER ITS REASONABLE ATTORNEYS FEESâ€™ AND COSTS.

(e) Administrative Relief. I UNDERSTAND THAT THIS AGREEMENT DOES NOT
PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR
FEDERAL ADMINISTRATIVE BODY SUCH AS THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, THE WORKERSâ€™
COMPENSATION BOARD, OR OTHER AGENCY OF THE STATE IN WHICH I AM EMPLOYED
BY THE COMPANY. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING
COURT ACTION REGARDING ANY SUCH CLAIM.

(f) Voluntary Nature of Agreement. I ACKNOWLEDGE AND AGREE THAT I AM
EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE
INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE
THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY
QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING
EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT I AM
WAIVING MY RIGHT TO A JURY TRIAL. FINALLY, I AGREE THAT I HAVE BEEN
PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE
BEFORE SIGNING THIS AGREEMENT.

16. General Provisions.

(a) Governing Law; Consent to Personal Jurisdiction. This Agreement
will be governed by the laws of the State in which I am employed, without
giving effect to any choice of law rules or principles that may result in
the application of the laws of any jurisdiction other than that of the
State in which I am employed. To the extent that any lawsuit is
permitted under this Agreement, I hereby expressly consent to the
exclusive personal jurisdiction of the state and federal courts located
in California for any lawsuit filed against me by the Company.

(b) Entire Agreement. This Agreement, together with the Exhibits
herein and my offer letter from the Company, set forth the entire
agreement and understanding between the Company and me relating to the
subject matter herein and supersede all prior discussions or
representations between us including, but not limited to, any
representations made during my interview(s) or relocation negotiations,
whether written or oral. No modification of or amendment to this
Agreement, nor any waiver of any rights under this Agreement, will be
effective unless in writing signed by the Chief Executive Officer of the
Company and me. Any subsequent change or changes in my duties, salary or
compensation will not affect the validity or scope of this Agreement.

(c) Severability. If one or more of the provisions in this Agreement
are deemed void by law, then the remaining provisions will continue in
full force and effect.

(d) Successors and Assigns. This Agreement will be binding upon my
heirs, executors, assigns, administrators and other legal representatives
and will be for the benefit of the Company, its successors, and its
assigns.

(e) Waiver. Waiver by the Company of a breach of any provision of this
Agreement will not operate as a waiver of any other or subsequent breach.

(f) Survivorship. The rights and obligations of the parties to this
Agreement will survive termination of my employment with the Company.

Date:

        Signature

Name of Employee (typed or printed)


Date:
            Signature

Name of Company Representative (typed or printed)

Exhibit A
GOOGLE INC.
LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP


Title
Date
Identifying Number or Brief Description




___ No inventions or improvements
___ Additional Sheets Attached
Signature of Employee:
Print Name of Employee:
Date:
Exhibit B
Google Inc.
Termination Certification

This is to certify that I do not have in my possession, nor have I failed
to return, any devices, records, data, notes, reports, proposals, lists,
correspondence, specifications, drawings, blueprints, sketches,
materials, equipment, other documents or property, or reproductions of
any aforementioned items belonging to Google Inc., its subsidiaries,
affiliates, successors or assigns (together, the "Company").
I further certify that I have complied with all the terms of the
Company's At Will Employment, Confidential Information, Invention
Assignment, and Arbitration Agreement signed by me, including the
reporting of any inventions and original works of authorship (as defined
therein), conceived or made by me (solely or jointly with others) covered
by that agreement.
I have informed the Company in the event I am subject to any litigation
holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of: _____. I am / am not (crcle one) subject to a litigation hold/request for record retention.


Signature of Employee


Print Name


Date


_____
Address for Notifications

# EXHIBIT C

**Subject:** SPIVAK v GOOGLE SERVICE

**Date:** Friday, March 31, 2023 at 8:56:56 AM Pacific Daylight Time

**From:** Rebecca Spivak

**To:** michaelpfyl@google.com, kwalker@google.com

**Attachments:** image002.png

---

**From:** noreply@jamsaccess.com <noreply@jamsaccess.com>
**Date:** Friday, March 31, 2023 at 8:30 AM
**To:** rebeccaspivak@outlook.com <rebeccaspivak@outlook.com>
**Subject:** CONFIRMATION: DEMAND SUBMISSION



## CONFIRMATION: DEMAND SUBMISSION

Your demand for arbitration was received. The reference number for this matter is **#5160000362** . **Please note that this demand, including any/all attachments, must be served on all parties. Once you have served the demand, a copy of the proof of service must be provided to JAMS. Click here to upload the proof of service to JAMS Access.**
Below you will have access to the full submitted information as well as **all uploaded documents.**

**LOGIN TO SEE CASE SUBMISSION**

LOGIN TO SEE CASE SUBMISSION

### Submission Information

REBECCA SPIVAK
Seattle
6175191100
rebeccaspivak@outlook.com

---

**JAMS Resolution Center**

Seattle, Washington

**Requested Hearing Location**

**Arbitration Rules**

JAMS Employment Arbitration Rules and Procedures

**Filling & Submission Fees Details:**

For matters based on a clause or agreement that is required as a condition of employment, employee pays no more than $400. Employer pays the balance of filing fee.

Consumer or Employment Arbitration

**Claimants**                     **Claimant Representative(s)**

**1.** Rivka Spivak
128 NE 51st Street
98105 WA Seattle
6175191100
rebeccaspivak@outlook.com

**Respondent(s)**                 **Respondent Representative(s)**

**1.** Google
CA Mountain View

## Nature of Dispute

JAMS has prior history. Google used illegal methods to force claimant to abandon the case, and because of Google's misconduct, claimant is not barred by any applicable law from returning to these claims.

**Amount in Controversy (U.S. dollars)** 500000000

**Proof of service of the demand on the appropriate party**

## Agreement

JAMS already has it.

**N**
**N**
**Proof of service of the demand on the appropriate party**

## Consumer & Employment

This is NOT a **CONSUMER** ARBITRATION

Please do not reply directly to this email as you will not receive a response. For assistance, please visit our Contact Us center at access.jamsadr.com/support or call your Case Manager

# EXHIBIT D



# APPOINTMENT OF ARBITRATOR

NOTICE TO ALL PARTIES                                    May 24, 2023

Re:        Spivak, Rivka vs. Google
           Reference #:  5160000362

Dear Parties:

Hon. Richard F. McDermott (Ret.) has been appointed Arbitrator in the above-referenced matter.  In accordance with the JAMS Employment Rules no party may have *ex-parte* communications with the Arbitrator.  Any necessary communication with the Arbitrator must be initiated through the case manager.

The Arbitrator will bill in accordance with the enclosed Fee Schedule. The arbitration will be administered consistent with the enclosed JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness.  According to this Policy, the only fee a consumer employee may be required to pay is $400 of the Filing Fee.  All other costs, including the remainder of the Filing Fee, must be borne by the company. JAMS will also administer the case consistent with JAMS Cancelation/Continuance policy.  Any party who cancels or continues a hearing after the deadline will be responsible for 100% of the professional fees unless we can fill the reserved but unused time with another matter.

JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.  Under appropriate circumstances, the Arbitrator may award JAMS fees and expenses against any party.

The paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls.  An invoice for this deposit is attached. Payment is due upon receipt. Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator.

Your new contact person for this file is Michelle Nemeth, Case Manager to Hon. Richard F. McDermott (Ret.).

Michelle Nemeth
1420 Fifth Ave. Suite 1650
Seattle, WA 98101
Phone: 206-292-0441
Fax: 206-292-9082
Email: MNemeth@jamsadr.com

Contact me at 206-292-0457 or mwilson@jamsadr.com if you have questions.

Sincerely,

*M Wilson*

Michele Wilson
Senior Case Manager
mwilson@jamsadr.com

Enclosure

# EXHIBIT E

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

GOOGLE LLC,

        Plaintiff,

     vs.

RIVKA ("REBECCA") SPIVAK,

        Defendant.

NO. 23-2-23572-0

~~(PROPOSED)~~
**ORDER GRANTING GOOGLE'S
MOTION FOR VEXATIOUS
LITIGANT DESIGNATION AND
PRELIMINARY INJUNCTION**

*on the record*

THIS MATTER having come before this Court on December 20, 2023, for hearing upon the

motion of Plaintiff Google LLC ("Google") for vexatious litigant designation and preliminary

injunction, and the Court having reviewed the motion, responsive briefing, if any, and the records

and files herein, including the following:

    1.    Motion for Vexatious Litigant Designation and Preliminary Injunction;

    2.    Declaration of Allison Lane with exhibits;

    3.    Request for Judicial Notice;

    4.    ~~Defendant's opposition papers; and~~ *no appearance by*

    5.    ~~Google's reply papers.~~ *by Ms. Spivak + no opposition.*

IT IS ORDERED, ADJUDGED AND DECREED that Google's Motion for Vexatious

Litigant Designation and Preliminary Injunction is GRANTED. Defendant Rivka ("Rebecca")

Spivak is deemed a vexatious litigant. Until this matter can be fully heard, Spivak must (1) notify

Google before any planned litigation against it, (2) secure a pre-filing order from the presiding judge

~~PROPOSED~~ ORDER GRANTING GOOGLE'S    Page No. 1
MOTION FOR VEXATIOUS LITIGANT
DESIGNATION AND PRELIMINARY
INJUNCTION

DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127

1   or arbitrator in any court or tribunal in which she plans to file claims against Google, its agents,

2   employees, and/or counsel; and (3) not file any new claims, unless such presiding judge or arbitrator

3   determines that they have merit and are not being filed to harass, retaliate, or cause delay.

4       IT IS SO ORDERED.

5

6   Dated:   1/26/2024



7

8                                           Honorable James E. Rogers

9   Presented by:

10  *s/ Lauren M. Case*
    Lauren M. Case (WSBA No. 49558)
11  lmcase@duanemorris.com
    DUANE MORRIS LLP
12  Spear Tower
    One Market Plaza, Suite 2200
13  San Francisco, CA 94105-1127
    Tel: +1 415 957 3000
14  Fax: +1 415 957 3001

15  Attorneys for Plaintiff
    GOOGLE LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127